**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

MODEL BOARD, LLC, a Michigan limited liability company, MODEL GOVERNANCE, LLC, a Michigan limited liability company,

    Plaintiffs,

v.

THE BOARD INSTITUTE, INC., a Delaware corporation, SUSAN SHULTZ, an Individual and resident of Arizona,

    Defendants.
_____/

CASE NO. 08-12700

HON. MARIANNE O. BATTANI

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM AND DUE TO MODEL BOARD'S LACK OF CAPACITY TO SUE AND LACK OF STANDING**

  Before the Court is Defendants, The Board Institute, Inc. and Susan Shultz's Motion to Dismiss for Failure to State a Claim Due to Model Board LLC's Lack of Capacity to Sue and Lack of Standing (Doc. #15). The Court heard oral argument on January 7, 2009, and at the conclusion of the hearing, took this matter under advisement. For the reasons that follow, Defendant's motion is GRANTED in part and DENIED in part.

**I. STATEMENT OF FACTS**

  Plaintiff Model Governance, LLC, (Governance) and Defendant The Board Institute, Inc. (TBI) and Defendant Susan Schultz, president and principal shareholder of TBI, agreed to form a new company, Model Board LLC, (Model Board), in late 2006. TBI and Governance were in the business of providing unique guidance formats and analysis tools for advising boards of directors on governance issues.

Shultz formed TBI in September 2002, to provide corporate governance services to boards of directors. TBI provides online software to assist boards in conducting annual board evaluations. Mark Schlussel, the founder and CEO of Governance, contacted TBI in the summer of 2006 and proposed a merger. The parties entered into an Agreement of Sale and Merger (Agreement) on December 20, 2006. Defs.' Ex. C.

The proposed agreement required the formation of a holding company in the form of a Michigan limited liability company to be called Model Board, with four individuals as managing members, Shultz, Schlussel, Larry Stambaugh, and Victoria Carper. The membership interest would be distributed to TBI shareholders in exchange for TBI stock. The Agreement of Sale and Merger specified, "All appropriate filings in the states of Delaware, Michigan, Arizona, and California be completed to effectively launch the operation of Model Board LLC as a fully merged entity resulting in TBI and [Governance] being wholly owned subsidiary entities of Model Board, LLC." Defs.' Ex. C, Agreement, Art. IV, g. Defendants contend that it was understood between the parties that Schlussel would take these actions. The parties' Agreement of Sale and Merger specified the effective date of the merger as January 1, 2007. As part of the Agreement, Model Board, LLC, would acquire the assets of Governance, and the interests of TBI in a technology/software package known as the "index product". Id., ¶¶ 2.1(I), 2.1(h).

The Agreement included an "unwind" provision, which was available for use by either party should insufficient progress occur in meeting company milestones for capital within specific periods of time. It reads:

In the event Model Board, LLC has been unable to obtain $2M of financing

2

>on or before September 29, 2007, and there appears no reasonable expectation of funding being consummated within the foreseeable future, either a majority of the members of [Governance] or a majority of the shareholders of TBI may give notice to Model Board, LLC of its desire to terminate the merger.  Upon receipt of that notice the parties agree to use their best efforts to unwind the merger and return the respective assets contributed by their respective entities to the shareholders or members of that entity.

Id., Art. V. 3.  The Agreement of Sale and Merger also specified that it could be amended "only in a writing executed by all parties."  Id., Art. V. 5.

The parties contest whether the Agreement was amended on May 24, 2007, to eliminate the unwind provision. Pls.' Ex. B. According to Defendants, Schlussel repeatedly sought and pushed for the removal of the unwind provision, and although the parties discussed this matter, no written amendment to the Agreement was made.  The parties continued to work together for another year to develop and refine the business plan.  See Pls.' Exs. C-K.

On May 22, 2008, Shultz sent an e-mail to Schlussel exercising her rights pursuant to the unwind provision and offering to compensate Schlussel for any work that he had done.  Schlussel rejected the proposal.  Nevertheless, according to Plaintiffs, in May 2008, Shultz disclosed that she intended to avail the NASDAQ opportunity for TBI. Pls.' Exs. L, M.  Plaintiffs assert that she used the assets and trade secrets of Model Board in negotiating the deal.

Plaintiffs filed a complaint on May 30, 2008, in Oakland County Circuit Court, alleging a violation of the Michigan Trade Secrets Act (Model Board acquired the rights to the index software; Defendants misappropriated them), interference with a business expectancy (Model Board and Governance had valid business expectancies in the

formation of Model and in the furtherance of negotiations with NASDAQ), and Breach of Fiduciary Duty (Shultz had a duty as a member and director of Model Board to further its interest and not divert business opportunities to herself). Defendants timely removed.

## II. STANDARD OF REVIEW

In reviewing a motion for judgment on the pleadings under FED. R. CIV. P. 12(c), courts "us[e] the same standard as applies to a review of a motion under Rule 12(b)(6)." J.P. Morgan Chase Bank v. Winget, 510 F.3d 577, 581 (6th Cir. 2007). To survive a motion to dismiss under Rule 12(b)(6), a " 'complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory.' " Scheid v. Fanny Farmer Candy Shops, Inc., 859 F.2d 434, 436 (6th Cir. 1988)). The standard does not require "heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, __, 127 S. Ct. 1955, 1974 (2007).

Further, for the moving party to succeed it must establish it is clearly entitled to judgment even taking "all well-pleaded material allegations of the opposing party. . .as true." Winget, 510 F.3d at 581-82. The plaintiff cannot rely on "labels and conclusions, and a formulaic recitation of the elements of a cause of action," Twombly, 550 U.S. at __, 127 S. Ct. at 1964-65, but must "provide the 'grounds' of his 'entitle[ment] to relief.' " Id.

## III. DISCUSSION

### A. Model Board's Capacity to Sue

In their motion, Defendants challenge whether Model Board ever came into existence and whether it has the capacity to sue in federal court under FED. R. CIV. P.

4

17(b). Pursuant to Rule 17(b)(2), a corporation's capacity to sue is determined "by the law under which it was organized."

Although the federal rule is silent as to limited liability companies, under Michigan law, a limited liability company has "all powers granted to corporations." MICH. COMP. L. § 450.4210. The new business was to be incorporated in Michigan, and there is no dispute that Michigan law governs the issue of capacity to sue.

### 1. Incorporation

Here, the parties do not dispute that Model Board was not incorporated during the relevant time frame. Defendants conclude that in light of the failure to incorporate, Model Board has no legal existence.

Case law is clear, corporations exist "by legislative act." <u>Chicago Title & Trust Co. v. Forty-one Thirty-six Wilcox Bldg.. Corp.</u>, 302 U.S. 120 (1937). Because no one took the action necessary to bring Model Board into existence, it lacks capacity to sue under Rule 17(b), absent some viable exception. Plaintiffs' response to the clear standing authority is twofold: whether Defendants can challenge Model Board's status; and whether Model Board exists as a de facto corporation. The Court directs its attention first to the Defendants' standing to raise this issue.

Under MICH. COMP. L. § 450.1221,

> The corporate existence shall begin on the effective date of the articles of incorporation as provided in . . . . Filing is conclusive evidence that all conditions precedent required to be performed under this act have been fulfilled and that the corporation has been formed under this act, except in an action or special proceeding by the attorney general.

Based on the statute and case law , Plaintiffs argue that only the Michigan Attorney

General has the ability to challenge the existence of a corporation.  See Miller v. Allstate Ins. Co., 751 N.W.2d 463 (Mich. 2008) (refusing to allow a challenge to the corporate form to defeat capacity and standing of the opposing party).  The Court disagrees.

In Miller, the defendants asserted the plaintiff corporation improperly incorporated under the Business Corporations Act (BCA), MICH. COMP. L. § 450.1101 *et seq.*  The Michigan Supreme Court did not disagree with the contention that "the plaintiff had not perfected the corporate form."  Id., The Court framed "the essential question [as] turn[ing] on whether the defendants could raise standing as an issue."  Id.  The Miller Court held that the defendants could not challenge the status.

A careful reading of the case shows that Plaintiffs' reliance on Miller to defeat Defendants' challenge is misplaced.  Miller is distinguishable in that here, a new Michigan entity was never formed, whereas in Miller the entity was formed, albeit improperly.  Further, contrary to Plaintiffs' assertion, the status of the challenger, an "insider" in the matter before this Court as opposed to a third-party in the case of Miller, does not render the holding in Miller more compelling.  Lastly, the Court finds Plaintiffs' contention that challenges to corporate form are limited to the attorney general, ignores factual distinctions that render the statute and the cited case law inapplicable.  Only after the articles of incorporation have been filed does an irrebutable presumption arise that a corporation has actually been formed in compliance with the BCA.  The statutory exception to this general rule--allowing the Attorney General the sole authority to challenge whether a corporation has been properly incorporated--is not applicable because Model Board's articles of incorporation were never filed.  Accordingly, the Court

rejects Plaintiffs' argument that Defendants cannot challenge Model Board's corporate existence. It therefore considers Plaintiff's alternative argument: circumstances of this case warrant recognition of Model Board as a de facto corporation.

### 2. De Facto Existence

The partes disagree as to whether, during the relevant time frame, Model Board existed as a de facto corporation. For a business entity to be classified as a de facto corporation, Michigan law requires that the entity satisfy three requirements: "(1) a charter or statute under which a corporation with the powers assumed might have been organized; (2) a bona fide attempt to organize a corporation under such charter or statute; and (3) an actual use of the corporate powers." Tisch Auto Supply Company v. Nelson, 192 N.W. 600 (Mich. 1923).

The focus of the disagreement centers on whether the second or third criteria can be met. Pursuant to the Agreement's recitals, Art. I, and Art. IV, g, the parties contemplated that Model Board would operate as a fully merged Michigan entity with TBI and Governance as wholly owned subsidiaries. Despite the parties' intention at the time they executed the agreement, Plaintiffs have offered insufficient evidence that the members of Model Board made bona fide efforts to incorporate in compliance with the charter or statute, or that Model Board engaged in actual use of corporate powers that it would have obtained had it been incorporated properly.

During the relevant time frame, December 2006 through May 2008, there were no corporate filings in any state; no operating agreement was created; no membership interests in Model Board were issued to TBI shareholders; no meeting of the intended

managers of Model Board was held; and no money was invested. No actions were taken in the name of Model Board, and it signed no contracts.

Although Shultz executed the Sale and Merger Agreement with an effective date of January 1, 2007, and viewed in the light most favorably to Plaintiffs, amended the Agreement on May 24, 2007, her conduct in refining a business plan and moving Model Board forward does not equate to what is required here: that Model Board held itself out to third parties as a merged entity. The examples relied upon by Plaintiffs to support their argument likewise fail to show the necessary holding out by the entity or the parties. See Exhibits F (e-mail from Shultz to Schlussel about target markets and potential alliances), G (e-mail from Schlussel to Shultz discussing a financial model for TBI/MG), H (e-mail from Schlussel to Shultz discussing the ownership allocation of the merged entity), I (e-mail from Shultz to Schlussel regarding NASDAQ presentation), J (e-mail from Shultz to Schlussel regarding a proposed e-mail to send addressing security issues), K (e-mail from Shultz to Schlussel regarding the proposed product being offered to NASDAQ), N (document entitled Model Governance Call Agenda), O (e-mail from Shultz to Schlussel regarding notes about the AIG meeting), P (a proposal to AIG from Model Governance Board Institute), Q (document from Model Governance Board Institute signed by Schlussel regarding the "recently completed . . .Merger of Model Governance with The Board Institute to create MGBI"), R (draft of the articles of incorporation of Model Board, LLC), S (proposed Operating Agreement for Model Board LLC), T (proposed Resolution authorizing the exchanges transaction as contemplated in the Agreement of Sale and Merger), and U (unsigned draft Amendment to Consulting Agreement).

These documents fail to raise a genuine issue as to whether Model is a de facto company. Unlike situations wherein an attempt has been made to organize a corporation, and there has been a sufficient compliance with the law for a court to find a corporation de facto, here, the statutory requirements have never been met. Model Board never had a meeting of stockholders and directors. Officers were not elected. Stock was never issued. This is not a situation where the sole failure to comply with the statute was filing the articles of incorporation. Although the parties took steps to agree to form a corporation, and agreed what the make-up of the corporation would be, they did nothing more. This conclusion cannot be altered by filing the articles now. At the time the actions giving rise to this litigation occurred, Model Board had no corporate existence. Accordingly, the Court finds that it lacks standing to sue.

Nor is the Court's determination altered by Plaintiffs' contention that Schultz and TBI, who were parties to the merger agreement, are precluded from denying Model Board's corporate character based on an informality in its organization. The facts cannot sustain the theory of corporations-by-estoppel, as explained in 8 Fletcher Cyclopedia Corporations, § 3964.

> Estoppel to deny the existence of a pretended corporation may arise from a judgment either for or against a corporation. So a person who had sued and recovered judgment against a company as a corporation cannot thereafter maintain a second suit against its members individually or as partners on the same cause of action; nor can he maintain a suit to charge its members as partners with the amount of the judgment, nor for damages for falsely representing that they were a corporation.

Accord Estey Manufacturing Co. v. Runnels, 20 N.W. 823 (Mich. 1884) (adopting the theory).

9

Therefore, Plaintiffs' first claim, that Defendants violated a trade secret, which is brought solely on behalf of Model Board, must be dismissed for lack of capacity.[1] Likewise, Plaintiffs cannot proceed on Count III of the Complaint, in which Plaintiffs assert that Shultz breached her fiduciary duty to Model Board.

### B. Authority to Terminate the Agreement

Next, Defendants ask the Court for judgment on the pleadings, arguing that the Sale and Merger Agreement itself permitted Defendants to terminate the relationship. Under Michigan law, the "rights and duties of the parties to a contract are derived from the terms of the agreement." Wilke v. Auto-Owners Inc. Co., 664 N.W. 2d 776 (Mich. 2003). Defendants specifically assert that for Plaintiffs to pursue a claim under the terms of the Merger and Sale Agreement, they had to plead either the $2 million in financing had been achieved by September 29, 2007, or that the unwind provision was amended.

Plaintiffs do allege the latter in their Complaint. See Compl., ¶¶ 9, 37-40. Further, in response to this motion, Plaintiffs point to the parties' course of conduct, which they argue shows the validity of the parties' amendment. Plaintiffs have alleged Defendants wrongfully terminated the Agreement; that Defendants never exercised the unwind provision before the deadline date of September 29, 2007, and that, contrary to Defendants' argument, Shultz attempted to exercise the unwind eight months after the Amendment. Shultz's e-mail expressing an intent to take NASDAQ for herself constitutes

---

[1] In light of the Court's finding, it does not address Defendants' argument as to Model Board's standing. See Firestone v. Galbreath, 976 F.2d 279, 283 (6th Cir.1992) ("[C]apacity is conceived to be a party's personal right to litigate in a federal court" whereas standing questions "whether the plaintiff can show an injury in fact traceable to the conduct of the defendant." (quotation omitted)).

10

a second breach of the terms because the split of the opportunity was to have been based on ownership percentages, not on the commission Shultz offered to Schlussel.

Under Michigan law, even a written contract may be modified orally or in writing, Chatham Super Markets, Inc. v. Ajax Asphalt Paving, Inc., 121 N.W.2d 836 (Mich. 1963), provided the modification involves mutual consent. Adell Broadcasting Corp. v. Apex Media Sales, Inc., 708 N.W.2d 778 (Mich. Ct. App. 2005). "The mutuality requirement is satisfied where a modification is established through clear and convincing evidence of a written agreement, oral agreement, or affirmative conduct establishing mutual agreement to waive the terms of the original contract." Quality Products & Concepts Co. v. Nagel Precision, Inc., 666 N.W.2d 251, 258 (Mich. 2003) (holding "that parties to a contract are free to mutually waive or modify their contract notwithstanding a written modification or anti-waiver clause because of the freedom to contract.").

A review of the Complaint reveals that the claim has been pleaded adequately. Parties are free to mutually alter the terms of their contracts even in light of a nonmodification clause. In this case, the parties dispute whether they consented to modify the original contract. Nevertheless, there is no heightened pleading standard despite the requirement that Plaintiffs must advance "clear and convincing evidence" of the parties' "mutual agreement to waive the terms of the original [unambiguous] contract" to succeed on their claim. See Quality, supra.

In Count II, Plaintiffs' claim is advanced not only on behalf of Model Board, but also on behalf of Governance. They allege that they had valid business expectancies in the formation of Model Board and in the negotiations with NASDAQ. The parties portray their interaction with NASDAQ differently. In light of the factual disputes, and the viability of this

11

argument based on the parties' contract, the Court declines to grant Defendants judgment on the pleadings.

## IV.  CONCLUSION

For the reasons discussed above, the Court **GRANTS** Defendants' request to dismiss Model Board.  The Court **DENIES** Defendants' request to dismiss the complaint; Count II adequately alleges a claim on behalf of Governance.

**IT IS SO ORDERED.**

s/Marianne O. Battani
MARIANNE O. BATTANI
UNITED STATES DISTRICT JUDGE

Date:  March 12, 2009

## CERTIFICATE OF SERVICE

A copy of this Order was mailed and/or electronically filed to counsel of record on this date.

s/Bernadette M. Thebolt
Deputy Clerk
